Teresa Anne GARMON,
Plaintiff–Counter–Defendant–Appellant,

v.

LUMPKIN COUNTY, GEORGIA, and Kenneth Seabolt, in his official capacity as Sheriff, Defendants–Counter–Claimants–Appellees.

No. 88–8771.

United States Court of Appeals,
Eleventh Circuit.

Aug. 4, 1989.

Graham G. McMurray, Atlanta, Ga., for plaintiff-counter-defendant-appellant.

Robert E. Andrews, Gainesville, Ga., Kelso C. Horne, Jr., Dahlonega, Ga., for defendants-counter-claimants-appellees.

Before VANCE and ANDERSON, Circuit Judges, and ATKINS *, Senior District Judge.

VANCE, Circuit Judge:

Teresa Anne Garmon brought this action against the Sheriff of Lumpkin County and Lumpkin County alleging a violation of her civil rights resulting from her unconstitutional arrest. The district court granted defendants' motion for directed verdict based upon the doctrine of qualified immunity. For the reasons stated below, we reverse.

On January 22, 1986, Mrs. Garmon reported to the Lumpkin County Sheriff's Department that she had been confronted at her home in Fulton County by a man who demanded that she drive him to Dahlonega, located in Lumpkin County. Mrs. Garmon reported that upon arriving in Dahlonega, the alleged abductor got out of her car and fled. After contacting the Georgia Bureau of Investigation ("GBI") and officials in Fulton County, Sheriff Seabolt accompanied Mrs. Garmon and GBI Agent William T. Attaway to the site where Mrs. Garmon said her abductor had left her car. No physical evidence of the alleged kidnapping was discovered.

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

The following morning, Fulton County Detective Ronald Fuller accompanied Mrs. Garmon to police headquarters in Atlanta, where she assisted in producing a composite drawing of her abductor. Detective Fuller and Mrs. Garmon proceeded to GBI headquarters, where Mrs. Garmon consented in writing to a polygraph examination. Because there was a possibility Mrs. Garmon was pregnant, however, the examiner refused to administer the test and advised her to set up another appointment after she had consulted her physician.

On February 9, 1986, less than three weeks after Mrs. Garmon's alleged abduction, an article about the investigation was published in a Gainesville, Georgia newspaper. The article stated that Sheriff Seabolt was convinced Mrs. Garmon was not telling the truth and that he was considering pressing charges against her for the false report of a crime. Sheriff Seabolt was quoted as saying that "[t]he problem is, we can't prove or disprove anything she said" and that "[f]rom this point on, anything I pursue in this case will be charges against her." The article was received into evidence, and Sheriff Seabolt's testimony at trial established that its contents were substantially correct.

Three days later, Sheriff Seabolt instructed one of his investigators, who had little involvement in the case, to obtain a warrant for Mrs. Garmon's arrest. The county magistrate issued the warrant and Mrs. Garmon was arrested at her home the following day. She was released from the Fulton County jail at 4:00 a.m. the following morning after posting a $1,050 bond. On February 25, 1986, more than one year after her arrest, the second grand jury before which the case was presented returned a true bill indicting Mrs. Garmon for the offense of giving a false statement. Her trial resulted in a judgment of acquittal.

Mrs. Garmon filed this 42 U.S.C. § 1983 action on February 3, 1988 against Sheriff Seabolt and Lumpkin County alleging that their actions in causing her arrest violated her rights under the fourth and fourteenth amendments. The district court directed a verdict in favor of appellees, finding that although appellees lacked probable cause to arrest Mrs. Garmon, they were insulated from liability by both the magistrate's issuance of the arrest warrant and the grand jury's ultimate return of an indictment.

To establish appellees' liability under section 1983, Mrs. Garmon must demonstrate that Sheriff Seabolt and the county acted under color of state law to deprive her of her constitutional rights. Appellees do not dispute that their conduct constituted state action. Rather, they argue that Mrs. Garmon's constitutional rights were not violated because the magistrate and ultimately the grand jury found that probable cause existed to arrest her.

The standard for reviewing the district court's entry of a directed verdict is whether, considering all of the evidence in the light most favorable to the non-moving party, the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not reach a different conclusion. *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985).

■ We first consider appellees' argument that the magistrate's issuance of the arrest warrant conclusively establishes the existence of probable cause for Mrs. Garmon's arrest. From the face of the arrest warrant it is evident that it was issued without probable cause. The incorporated affidavit supporting the warrant, completed at the direction of Sheriff Seabolt by one of his investigators who had relatively little involvement in the case, states only that the affiant swears that "to the best of (his or her) knowledge and belief Teresa Ann Garmon did ... commit the offense of false report of a crime." Such a conclusory assertion clearly is insufficient to establish probable cause. *See Byars v. United States*, 273 U.S. 28, 29, 47 S.Ct. 248, 249, 71 L.Ed. 520 (1927), *overruled on other grounds, Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). The affidavit contains neither information providing the basis for the affiant's belief nor any affirmative allegation that the affiant had personal knowledge of the circum-

stances surrounding the alleged commission of the crime. The magistrate nevertheless issued the warrant on the stated basis of "sufficient causes made known to me *in the above affidavit."* (emphasis added). Because the affidavit contained nothing but the investigator's conclusion that Mrs. Garmon had committed the crime, the magistrate could not possibly have conducted the independent assessment required by the fourth amendment of the probability that Mrs. Garmon committed the crime charged.[1] *See Giordenello v. United States,* 357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503 (1958) (magistrate "should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime"); *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948) (protection afforded by the fourth amendment consists of requiring that inferences from facts leading to the complaint "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime"). The issuance of the arrest warrant therefore was not supported by probable cause.

■ Appellees urge that even if the magistrate's issuance of the warrant was without probable cause, the subsequent grand jury indictment conclusively establishes that sufficient probable cause existed for Mrs. Garmon's arrest. We are not persuaded by this argument. When an arrest warrant is based upon an indictment, the grand jury's determination that probable cause existed to return the indictment also establishes that probable cause existed for the issuance of an arrest warrant for the person charged. When the warrant issues and the arrest occurs *before* an indictment is handed down, however, the question whether probable cause existed for the arrest must be answered by reviewing the facts that were before the magistrate. Accordingly, support in this case for a finding of probable cause must be found in the affidavit accompanying the application for the warrant. *Cf. Giordenello,* 357 U.S. at 487, 78 S.Ct. at 1250 (in the absence of an indictment, United States Commissioner must determine probable cause for arrest based on facts sworn to in complaint in federal criminal proceeding).[2] A subsequent indictment does not retroactively provide probable cause for an arrest that has already taken place.

Appellant Seabolt argues that even if Mrs. Garmon's warrant was issued without probable cause he nevertheless is shielded from liability for damages under the rule of qualified immunity. The United States Supreme Court recently has held that the standard of objective reasonableness set forth in *United States v. Leon,* 468 U.S. 897, 919–20, 104 S.Ct. 3405, 3418–19, 82 L.Ed.2d 677 (1984), and *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727–38, 73 L.Ed.2d 396 (1982), delineates the degree of qualified immunity accorded an officer whose request for a warrant ultimately causes an unconstitutional arrest. *Malley v. Briggs,* 475 U.S. 335, 344, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986). Under this standard, conduct that violates "clearly

---

1. If the warrant stated that its issuance was based on probable cause shown, for example, we might presume that oral testimony was presented which supported the magistrate's determination. In this case, however, we know that no probable cause existed because the warrant explicitly states that it is supported by information sworn to "in the above affidavit."

2. The district court relied heavily on *Shepard v. Byrd,* 581 F.Supp. 1374 (N.D.Ga.1984), for its conclusion that both the proper issuance of an arrest warrant by a magistrate and the return of indictment by a properly constituted grand jury conclusively establish the legality of an arrest. *See id.* at 1388. We do not endorse the retroactive effect given by the *Shepard* court to a grand jury indictment returned after the suspect's arrest with respect to the issue of probable cause for the issuance of the arrest warrant. The cases relied upon by the *Shepard* court for its conclusion address the propriety of an arrest warrant issued *pursuant* to an indictment. *See, e.g., Rodriguez v. Ritchey,* 556 F.2d 1185, 1191 (5th Cir.1977) (en banc) ("an indictment by a properly constituted grand jury conclusively determines the existence of probable cause and provide the authority for an arrest warrant to issue"), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978). These cases do not hold that an indictment retroactively establishes probable cause for an arrest occurring before the grand jury convenes.

established statutory or constitutional rights of which a reasonable person would have known," *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738, will support liability under 42 U.S.C. § 1983. *See Malley*, 475 U.S. at 339–45, 106 S.Ct. at 1095–98. Applying the standard in the context of an allegation of unlawful arrest, the question is whether "a reasonably well-trained officer in [appellee's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Id.* at 345, 106 S.Ct. at 1098.

We conclude that appellee Seabolt did not have an objectively reasonable basis for believing that his investigator's affidavit established probable cause to arrest Mrs. Garmon. The affidavit contained no facts whatever. We also conclude that Sheriff Seabolt's explanation for seeking Mrs. Garmon's arrest is not objectively reasonable as a matter of law. In the newspaper article published just days before Mrs. Garmon's arrest, Sheriff Seabolt stated that the reason for his tentative decision to press charges against her was that "[t]he problem is, we can't prove or disprove anything she said." The law enforcement authorities' inability to find evidence of Mrs. Garmon's alleged abduction cannot reasonably be said to constitute affirmative evidence that she made a false report of a crime.

The only other fact contributing to Sheriff Seabolt's decision to seek an arrest warrant was Mrs. Garmon's refusal to submit to a polygraph examination. Under Georgia law an alleged victim of a crime is not required to submit to a polygraph test, *Houser v. State*, 234 Ga. 209, 214 S.E.2d 893, 898 (1975), and Mrs. Garmon's refusal to do so in this case as a matter of law does not give rise to an objectively reasonable inference that her report of the abduction was untruthful. There are many possible reasons for a person's refusal to submit to a polygraph examination. Many courts have questioned their reliability and historically have restricted their admissibility. *See, e.g., United States v. Russo*, 796 F.2d 1443, 1453 (11th Cir.1986). Furthermore, absent a waiver of fifth amendment rights, a person may not be compelled to submit to a polygraph examination. *See Hester v. City of Milledgeville*, 777 F.2d 1492, 1494–95 and n. 6 (11th Cir.1985). A natural corollary to that rule is that a defendant's refusal to submit to a polygraph examination cannot be used as incriminating evidence and generally is inadmissible as well. *See, e.g., United States v. Cardarella*, 570 F.2d 264, 267 (8th Cir.), *cert. denied*, 435 U.S. 997, 98 S.Ct. 1651, 56 L.Ed.2d 87 (1978). Nor is the refusal of an alleged victim of a crime to submit to a polygraph examination admissible under Georgia law to impeach the veracity of the victim's story. *Houser*, 214 S.E.2d at 898.

In this case, Mrs. Garmon initially *consented* to a polygraph examination. She refused only upon being informed by the polygraph examiner that the test should not be administered to her because she might be pregnant. Sheriff Seabolt was well aware of her reason for refusing to take the test. Under these circumstances, Sheriff Seabolt did not have an objectively reasonable basis for considering her refusal to submit to the test as constituting probable cause for her arrest. Indeed, the record does not disclose that appellee Seabolt has been able at any time to state any fact or combination of facts that would constitute probable cause. At oral argument, with the advantage of hindsight and reflection, his counsel confessed an inability to do so.

Sheriff Seabolt's final contention is that even if he should have known that the affidavit failed to establish probable cause, the magistrate's issuance of the warrant breaks the causal chain between the warrant application and the arrest. The Supreme Court has squarely addressed this question and held that a magistrate's decision to issue an arrest warrant does not absolve the officer who applied for the warrant from liability:

> [The question] is whether a reasonably well-trained officer [applying for a warrant] would have known that his affidavit failed to establish probable cause and that he should not have applied for the

warrant. If such was the case, the officer's application for a warrant was not objectively reasonable.... It is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal system.... We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising professional judgment.

*Malley,* 475 U.S. at 345, 106 S.Ct. at 1098 (footnotes omitted); *see also id.* n. 7 (section 1983, like common law, recognizes causal link between application for warrant and resulting unconstitutional arrest).

For the reasons set forth above, the judgment of the district court entering a directed verdict in favor of appellees is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.