**James Kelsey ROCK, Plaintiff,**

v.

**Gordon LOWE and the Mayor and City Alderman of the City of Statesboro, Georgia, Defendants.**

**Civ. A. No. CV693–119.**

United States District Court,
S.D. Georgia,
Statesboro Division.

July 14, 1995.

Randall Arthur Schmidt, Savannah, GA, for plaintiff.

Brent Jamieson Savage, Savage & Turner, Savannah, GA, for defendants.

### *ORDER*

EDENFIELD, Chief Judge.

## I. Introduction

Plaintiff James Kelsey Rock was arrested, indicted, and held without bond for over four months as a result of an armed robbery for which he was later acquitted. Rock contends

that had the arresting officer timely revealed the statement of an exculpatory witness, Rock never would have been arrested and incarcerated. Rock has sued the arresting officer, Lt. Gordon Lowe of the Statesboro Police Department, and the Mayor and City Alderman of Statesboro, Georgia, for damages resulting from his arrest and incarceration. Rock claims Defendants violated his rights under the Fourth, Fifth, Eighth, and Fourteenth amendments to the U.S. Constitution and his rights under Article I, § 1, ¶ I, XIII, and XVII of the Georgia Constitution. This case is presently before the Court on Defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons discussed below, the Court **GRANTS** the Defendants' motion and denies Rock's claims.

## II. Facts

Late one Sunday morning Norman Ellerbeck, an employee of Time Saver Minit Market Number 33, drove to Farmers & Merchant's Bank at the College Plaza in Statesboro to make a deposit of almost $6,000 to his company's account at the bank's drive-through window. As he got out of his El Camino to deposit the bank money bag in the night depository slot, he was approached by a man he described as being a

> black male 5′9″ tall approx. 175 lbs. short hair wearing dark pants med. dark blue wind breaker clean shaven med. dark, complexion age middle twenties.

Ellerbeck, Stmt. at 1. Apparently, when Ellerbeck saw that the man had a pistol, he made the mistake of calling it a toy at which point the assailant fired the weapon at the pavement. With new respect for the pistol, but still undaunted, Ellerbeck refused to let the assailant take his company's money. A struggle ensued and the robber fired his pistol again. Apparently, this was enough to distract the fearless Ellerbeck long enough so the robber could grab the money bag and run. Shaken up but uninjured, Ellerbeck got in his car, drove to the nearest Time Saver Minit Market and called the police.

Lt. Lowe responded to the call. Lowe took Ellerbeck's statement and then took the statement of another witness, Katie Spicer.

Spicer first gave Lowe an oral account of what she saw and later provided a written statement. These statements are the basis of this lawsuit. The statements are substantially the same except that in her oral account she says that at the time of the robbery she was standing in front of a Piggly Wiggly grocery store approximately 100 yards from the bank's drive-through window, whereas in her written statement she says she was standing at the bank's automatic-teller machine approximately 50 yards from the drive-through window.

In both statements Spicer reports that she saw a "young black male wearing dark shorts and a very faded short sleeved shirt" and carrying a gym bag run away from the bank close to the time of the robbery. She described the size of the black man by stating: "I am 5′2″ and weigh 102 lbs.—the black guy couldn't have been much bigger than I am." Spicer Stmt. at 1.

In addition to taking Spicer's and Ellerbeck's statements, Lowe recovered one brass 9 mm shell casing in the bed of Mr. Ellerbeck's El Camino. He also discovered one silver 9 mm bullet casing on the ground near the bank and two lead fragments on the floor board of Ellerbeck's car.

In his affidavit Lowe states that the next day he met with the Bulloch County District Attorney and discussed both Ellerbeck's and Spicer's statements with him. Lowe Aff. at ¶ 9. That night the Bulloch County Sheriff's Department received information from a confidential informant that Rock was the individual who had robbed Ellerbeck. This was corroborated the next morning by a second confidential informant who allegedly told Lowe that Rock had been involved in the robbery and that he had a "bank bag with a lot of money in it." Lowe Aff. ¶ 11.

Four days after the robbery, the Bulloch County Sheriff's Department responded to a shooting at the Foxridge Apartments in Statesboro. Apparently, Rock and a friend were fired upon by three other individuals. Although Rock had a 9 mm pistol with him, allegedly Rock did not return fire because he did not have any ammunition. The Sheriff's Department apprehended Rock, confiscated

his pistol, and took his statement. Def.Exh. 8 & 9. Rock also signed a property receipt admitting ownership of the weapon.

When Lowe learned of the shooting the next morning from the Sheriff's Department he had the shell casings and Rock's pistol sent them to the Georgia Bureau of Investigation crime lab in Savannah. After analyzing the pistol and the shells, the crime lab concluded that Rock's pistol had been used in the armed robbery of Ellerbeck.

Three weeks after the robbery, Ellerbeck identified Rock in a photograph line-up administered by Lowe. That same day, Rock reported to the Sheriff's Department that he had lost $1,792 in cash. Rock contends that he left the money on the roof of his car while he was parked in front of the Time Saver Minit Market in which Ellerbeck worked. After driving off he discovered what he had done and returned to the store to report the lost money. Rock alleges he spoke to Ellerbeck and that Ellerbeck did not appear to recognize him.

A month after the robbery Lowe appeared before Magistrate Judge Billy Joe Deal to obtain a warrant for the arrest of Rock. In support of his affidavit, Lowe provided the magistrate with Ellerbeck's statement and explained that Ellerbeck had identified Rock as his assailant in a photograph line-up. Lowe also provided the magistrate with the GBI report matching Rock's pistol to the shell casings Lowe found at the crime scene. Last, Lowe submitted Rock's property claim in which Rock reported losing the $1,792 in cash. Lowe Aff. ¶ 17. Based on this information, Magistrate Judge Deal signed Rock's arrest warrant.

On December 2, 1991, Rock was arrested. Two days later Rock appeared before Magistrate Judge Deal at a preliminary/bond hearing where the magistrate denied bond. On December 11, 1991, a second hearing was held, this one before Judge Neville of the Bulloch County Superior Court. Only Lowe and Ellerbeck testified. Although Lowe mentioned that there was an additional witness to the crime, he asserted that the description of the assailant offered by the second witness was consistent with Ellerbeck's. After hearing the evidence against Rock, Judge Neville found that there was probable cause to bind Rock over to the grand jury on the charge of armed robbery. Judge Neville also denied bond based on both the seriousness of the crime and the fact that Rock had been involved in another shooting four days after the robbery.

On February 4, 1992, the grand jury issued an indictment for armed robbery. Rock was arraigned on February 19, 1992, where he pled not guilty. In response to discovery motions that Rock's attorney filed, the district attorney produced Spicer's written statement. On April 13, 1992, Rock was released on bond and on April 28, 1992, he was acquitted. Rock filed this lawsuit eighteen months later on November 23, 1993.

### III. Summary Judgment Standard

■ To prevail on its summary judgment motion, the Defendants must demonstrate to the Court's satisfaction no genuine issues of material fact exist and that the Court can render a judgment as a matter of law, thus obviating the need for a trial. *Great Lakes Dredge and Dock Co. v. Miller*, 957 F.2d 1575, 1578 (11th Cir.1992) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)) *cert. denied, Chevron Transport Corp. v. Great Lakes Dredge & Dock Co.*, —— U.S. ——, 113 S.Ct. 484, 121 L.Ed.2d 388 (1992).

■ In assessing whether the movant should prevail in a motion for summary judgment, the Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir.1992). The Court must avoid weighing conflicting evidence, *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Brown v. Hughes*, 894 F.2d 1533, 1536 (11th Cir.1990), *cert. denied,* 496 U.S. 928, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990), or making credibility determinations. *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir.1987).

■ A mere "scintilla" of evidence, however, will not suffice to support the nonmov-

ant's position. *See, e.g., Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990). Essentially, if the submissions of the parties could not prompt a rational trier of fact to find for the nonmovant, there is no genuine issue for trial. *Matsushita Elec. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## IV. Analysis

### A. Federal Claims Under Section 1983

■ Counts One and Two of Rock's suit rest on Section 1983 which "provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution."[1] *Collins v. City of Harker Heights,* 503 U.S. 115, 120–21, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261, 270 (1992). "Persons" liable under § 1983 include municipalities and other local government entities as well as individuals. *Monell v. New York Dept. of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978).

■ Section 1983 encompasses all substantive due process rights including those listed in the Bill of Rights, as well as other fundamental rights such as privacy, *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), marriage, *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), and safety and physical movement, *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). Government officials cannot trammel any of these federally guaranteed rights without becoming potentially liable under Section 1983.

The rights implicated in this case are the following: (1) Rock's right to be free from unlawful seizures under the Fourth and Fourteenth Amendments; (2) his right to due process under the Fifth and Fourteenth Amendments; and (3) his right to be free from the imposition of excessive bail under Eight and Fourteenth Amendments. In Count One Rock holds Lowe accountable for

his arrest and incarceration and the attendant harm he suffered as a result. In Count Two he looks to the Mayor and City Alderman of Statesboro for relief.

### 1. Count One—Lt. Lowe

In Count I Rock alleges that Lowe failed to apprise Magistrate Judge Deal, Judge Neville, and Rock of Spicer's statements. In failing to do so, Rock contends that Lowe deprived Rock of his Constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments as described above. In response Lowe first asserts that he was protected by qualified immunity. The Court agrees.

■ Qualified immunity protects government officials performing discretionary functions from personal civil liability under federal law unless their conduct violates a "clearly established [federal] statutory or constitutional right[ ] of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In asserting qualified immunity, an official cannot rely on " 'general conclusory allegation' or 'broad legal truisms' " to show that a right is clearly established. *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993) (quoting *Barts v. Joyner,* 865 F.2d 1187, 1190 (11th Cir.), *cert. denied,* 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989)), *modified,* 14 F.3d 583 (11th Cir.1994). Instead, the official must show that, "when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)." *Id.* at 1557. "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.* Even in such cases where the official escapes liability, it is important to

---

1. Section 1983 provides in pertinent part:
   Every person who, *under color of any statute, ordinance, regulation, custom, or usage,* of any State or Territory ... subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the *deprivation of any rights,* privileges, or im-

munities *secured by the Constitution and laws,* shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

§ 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

realize that the government itself may still be found liable.

### a. Fourth Amendment Claim— Unlawful Arrest

#### 1) Arrest Warrant

The Supreme Court has held that qualified immunity does not protect a police officer who "seeks a warrant on the basis of an affidavit that does not show reasonably objective probable cause—even if the magistrate erroneously issues the warrant." *Kelly v. Curtis*, 21 F.3d 1544, 1555 (11th Cir.1994) (citing *Malley v. Briggs*, 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1097–98, 89 L.Ed.2d 271 (1986)). The test established by the Supreme Court in *Briggs*

> is whether a reasonably well-trained officer ... would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. If such was the case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger or an unlawful arrest.

*Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 344–45, 106 S.Ct. at 1097–98 (1986)). The Eleventh Circuit has applied this test in the context of arrest warrant challenges in both *Garmon v. Lumpkin County*, 878 F.2d 1406, 1408 (11th Cir.1989) and *Kelly v. Curtis*, 21 F.3d at 1555.

In *Kelly* the court found that a police officer made affirmative misstatements to assure that the arrest warrant she was seeking was issued. *Kelly*, 21 F.3d at 1555. In *Garmon* the court found that a police officer who had sought an arrest had violated the Constitution by supplying only a conclusory affidavit in support of the warrant. The court held that "[s]uch a conclusory affidavit clearly is insufficient to establish probable cause." *Garmon*, 878 F.2d at 1408–09.

■ Thus, to be protected by qualified immunity in the arrest warrant context, a police officer must have sufficient evidence to convince a reasonably well-trained officer that there was probable cause to support the issuance of an arrest warrant. *Briggs*, 475 U.S. at 344–45, 106 S.Ct. at 1097–98. The police officer must then present this informa-

tion to the magistrate. *Garmon*, 878 F.2d at 1408–09.

In seeking an arrest warrant, however, a police officer does not have to reveal to a magistrate every piece of information gathered in the course of an investigation. *U.S. v. Colkley*, 899 F.2d 297, 300 (4th Cir.1990). As long as a police officer does not knowingly omit any information that would be material to a finding of probable cause, the police officer is covered by qualified immunity. *Id.* at 300.

■ It is clear that Lowe is covered by qualified immunity in this case. In the affidavit Lowe prepared for this case he contends that before seeking the arrest warrant, he discussed the Spicer statements with the prosecutor and told him that: (1) Spicer was not an actual eyewitness to the scuffle between Ellerbeck and the perpetrator; (2) her description of the assailant was completely different than that provided by Ellerbeck; and (3) her oral and written statements were different as to her location during the robbery.

Based on this information, which is not inconsistent with Spicer's statements, it appears that together Lowe and the prosecutor decided that Spicer's statements were not of great import. Apparently, Lowe and the prosecutor were not willing to put much stead in the statements of a witness that could not even remember to within 50 yards where she was standing at the time of the robbery. Thus, there is little evidence that Lowe intentionally withheld information from the magistrate in order to assure the warrant's issuance or even that Lowe acted recklessly in failing to divulge Spicer's statements.

Lowe also argues that although the Constitution places a duty upon law enforcement officers to disclose known exculpatory evidence to prosecutors, e.g., *Brady v. Maryland*, 373 U.S. 83, 86–88, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), it imposes no obligation upon these officers to second guess prosecutors about whether evidence is known to them is exculpatory. *Kelly*, 21 F.3d at 1552. Lowe contends that because the pros-

ecutor knew of Spicer's statements, Lowe is absolved of any wrongdoing on his part.

In response to this argument, Rock contends that Lowe's affidavit contains falsehoods. He alleges that Lowe never told the prosecutor about Spicer's statements and thus provided the prosecutor no opportunity to divulge this exculpatory information to the magistrate. In making this contention Rock relies on the fact that the prosecutor's records allegedly reflect that Lowe did not transfer the official case file on Rock to the prosecutor until well after the commitment hearing. Such speculative and circumstantial evidence which is "merely colorable, or is not significantly probative," is insufficient to create a genuine issue of material fact. *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2511. Lowe and the prosecutor could have discussed the case several times without the official case file being transferred to the prosecutor.

Having no evidence that Lowe did not inform the prosecutor the day after the robbery, as Lowe contends in his affidavit, Rock resorts to attacking Lowe's affidavit as self-serving. Although the Court never relishes relying on an affidavit prepared by a defendant, Rock has supplied the Court no reason to doubt Lowe's affidavit. Furthermore, Lowe's account seems quite reasonable. Spicer's statements were in the police file which the prosecutor was free to examine at anytime. Lowe has also presented credible reasons why he did not mention Spicer's statements on his arrest warrant affidavit. Moreover, as discussed below, the prosecutor's questioning of Lowe at the commitment hearing also indicated that the prosecutor knew of Spicer's statements.

■ More importantly, at summary judgment once the movant discharges his duty to show there is no material fact at issue, which the Court finds Lowe has done, the burden shifts to the nonmovant to show that such a dispute does exist. *Thompson v. Metropolitan Multi–List, Inc.*, 934 F.2d 1566, 1583 n. 16 (11th Cir.1991). Thus, in this instance, before the Court can disregard Lowe's affidavit, Rock must provide some probative evidence that conflicts with Lowe's account of the events. *Larry Harmon Pictures Corp. v.*

*Williams Restaurant Corp.*, 929 F.2d 662, 663 n. 1 (Fed.Cir.1991), *cert. denied* 502 U.S. 823, 112 S.Ct. 85, 116 L.Ed.2d 58 (1991). Rock has failed to do so; therefore, the Court rejects Rock's attempt to create a genuine issue of material fact by attacking Lowe's affidavit as self-serving. As the Seventh Circuit Court of Appeals has held, "a plaintiff's speculation is not a sufficient defense to summary judgment motion." *Karazanos v. Navistar Int'l Transportation Corp.*, 948 F.2d 332 (7th Cir.1991).

■ Even if the Court were to find that Lowe had made a deliberate or reckless misstatement or omission, Rock would not be entitled to any recovery unless the information was "material," that is, of such import that it would influence the magistrate's decision as to whether there was probable cause. *See Colkley*, 899 F.2d at 301. It is clear from the record that apprising the magistrate of the Spicer statements would have had little if any affect on his decision to issue the arrest warrant.

■ To secure an arrest warrant a police officer is only required to supply a magistrate with sufficient reliably trustworthy information to support an independent judgment that probable cause exists for the warrant. *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 563, 91 S.Ct. 1031, 1034, 28 L.Ed.2d 306 ((1971). In making this independent judgment the magistrate must decide, based on the evidence presented, whether it is reasonable to believe that the person sought has committed the offense. *Steagald v. U.S.*, 451 U.S. 204, 212, 101 S.Ct. 1642, 1647–48, 68 L.Ed.2d 38 (1981); *see also U.S. v. Tinkle*, 655 F.2d 617, 621 (1981) (citing *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). If the magistrate believes probable cause has been shown, he should issue the arrest warrant.

■ In this case Magistrate Judge Deal had sufficient evidence upon which to base a finding of probable cause. Although the affidavit that Lowe signed in support of the arrest warrant only included a conclusory statement that Rock had committed the armed robbery, and thus, was insufficient to

support the arrest warrant by itself, see *U.S. v. Ventresca*, 380 U.S. 102, 107, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965), Lowe submitted other documentation and information with the affidavit that provided a sufficient basis for the magistrates' determination of probable cause.

Lowe provided the magistrate with Ellerbeck's statement and explained that Ellerbeck had identified Rock as his assailant in a photograph line-up. Lowe also provided the magistrate with the GBI report that concluded that there was a high probability that the shell casings Lowe found at the crime scene had been fired from Lowe's pistol. Last, Lowe submitted Rock's property claim in which he reported losing $1,792 in cash three weeks after the incident. The Court finds this information, was more than adequate to serve as the basis for a finding of probable cause.

■ The only remaining question is whether Spicer's statements, which are exculpatory, would have been sufficient to defeat such a finding. Spicer's statements reveal that while standing at a spot 50 to 100 yards from the bank's drive-in window, Spicer heard a pistol shot and then saw a black man wearing a faded blue t-shirt and shorts struggling with Mr. Ellerbeck. She then heard a second shot and saw the assailant flee. The reason that this statement is exculpatory is because Spicer describes that assailant as being less than 5'2" tall and weighing less that 110 pounds. In contrast, Rock stands 6'2" and weighed between 185 and 200 pounds at the time of the robbery. The Court finds that this discrepancy alone is not sufficient to defeat a probable cause determination.

■ As the Supreme Court has long held, the evidence necessary to support a finding of probable cause is a much less than the evidence required to convict. *U.S. v. Ventresca*, 380 U.S. 102, 107, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965) (quoting *Locke v. United States*, 7 Cranch 339, 348, 3 L.Ed. 364). The magistrate already had Ellerbeck's statement. Ellerbeck was face-to-face with the robber and even struggled with him. Even if the magistrate had had Spicer's statements,

it would have been logical for him to rely more heavily on Ellerbeck's statement.

■ Furthermore, Spicer's statements do not contradict any of the other evidence Lowe provided to the magistrate. In light of this, the Court finds that with or without the Spicer statements, the magistrate had sufficient reliably trustworthy information to find that probable cause existed to justify Rock's arrest. *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 563, 91 S.Ct. 1031, 1034, 28 L.Ed.2d 306 (1971). Considering the above, the Court finds that Lowe is immune from suit for the alleged arrest warrant violations.

### 2) Commitment Hearing

■ Rock also contends that Lowe's testimony at the probable cause hearing before Judge Neville caused him to be held unnecessarily. In the hearing Lowe testified that an additional person had witnessed the armed robbery and that person had given a description of the attacker. When asked by the prosecutor if the witness's description had been consistent with Ellerbeck's description, Lowe answered yes. Whether Lowe was reckless or even perjurious in stating that Spicer's statements were "consistent" with Ellerbeck's is immaterial, because Lowe is absolutely immune from any Section 1983 claims based on testimony he gives at a judicial hearing. *Briscoe v. LaHue*, 460 U.S. 325, 346, 103 S.Ct. 1108, 1121, 75 L.Ed.2d 96 (1983); *Kelly*, 21 F.3d at 1554 (citing *West Point–Pepperell, Inc. v. Donovan*, 689 F.2d 950, 959 (11th Cir.1982)). Furthermore, the Court finds that had Lowe discussed the Spicer statements in full during his testimony, the outcome of the hearing would have been the same for the reasons discussed above.

### b. Fifth Amendment Claim

Rock contends that by withholding the Spicer statements, Lowe caused Rock to be detained in violation of his due process rights under the Fifth and Fourteenth Amendments. Rock bases this on the fact that he did not receive a copy of the Spicer statements until after he was indicted and his second attorney filed a discovery motion.

This claim is analogous to a *Brady* claim. Under the Supreme Court's decision in *Brady v. Maryland* the "prosecution must disclose evidence favorable to the accused if the evidence is material to guilt or punishment." *Routly v. Singletary,* 33 F.3d 1279, 1284 (11th Cir.1994) (citing *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). *Brady* material encompasses both impeachment evidence and exculpatory evidence. *Id.*

▮ In order to establish a violation of the *Brady* doctrine,

the defendant must prove: (1) that the state possessed evidence favorable to the defendant; (2) that he did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*Id.* at 1285 (citing *United States v. Meros,* 866 F.2d 1304, 1308 (11th Cir.1989). Because Rock has not supplied sufficient evidence that it would be able to prove all of these prongs at trial, his due process claim must fail. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

▮ Rock has not demonstrated he could not have obtained the evidence himself with any reasonable diligence. Rock has not demonstrated that he or his attorney ever asked about additional witness statements, nor has Rock produced any evidence that Lowe or the prosecutor attempted to suppress the statements. Most importantly, as explained above, Rock has not demonstrated how the outcome of his case would have been any different had Rock been supplied the Spicer statements at an earlier date. Thus, the Court finds this claim is groundless.

### c. Eighth Amendment Claim— Denial of Bail

▮ Rock also contends that Lowe's actions affected Magistrate Judge Deal's and Judge Neville's decisions to deny Rock bail. This claim is meritless for two reasons.

First, under Georgia Statutory Law a judge can only set bail for an armed robbery suspect if he finds that the person:

(1) Poses no significant risk of fleeing from the jurisdiction of the court or failing to appear in court when required;

(2) Poses no significant threat or danger to any person, to the community, or to any property in the community;

(3) Poses no significant risk of committing any felony pending trial; and

(4) Poses no significant risk of intimidating witnesses or otherwise obstructing the administration of justice.

O.C.G.A. § 17–6–1(e). Under Georgia Law evidence of the guilt or innocence of the person detained does not figure prominently in the judge's determination over whether to deny bail. *See Jones v. Grimes,* 219 Ga. 585, 134 S.E.2d 790 (1964).

▮ Thus, Lowe's alleged failure to reveal Spicer's statements in securing the arrest warrant and in mischaracterizing those statements when he testified before Judge Neville in the commitment hearing should have had little bearing on Judge Neville's decision to deny bail. Instead Judge Neville, in accordance with O.G.C.A. § 17–6–1(e), relied on the seriousness of the crime to gauge Rock's likelihood to flee, and the fact that Rock was engaged in a shooting two days after the armed robbery to determine whether Rock was likely to injure others while on bail. Based on these considerations the judge determined that it would be unwise to release Rock on bail pending trial. Whether this decision was a violation of the 8th amendment is beyond the scope of this case. The Court is concerned solely with whether Lowe's acts or omissions caused a Rock to be detained without bail improperly. As stated above, the Court finds that Rock would have been detained regardless of whether Rock was more forthcoming with the details of the Spicer statements.

### d. Reaching the Merits

The Court also finds that in examining Count I strictly on the merits and ignoring the qualified immunity analysis Officer Lowe

did not violate Rock's Constitutional rights. This finding is based in large measure on the Court's finding that the decision to issue the arrest warrant and the decisions involving bail would not have been any different had Lowe acted as Rock suggests he should have.

### 2. Count II—City of Statesboro

In Count II Rock alleges that the Mayor and City Alderman of Statesboro failed to institute adequate procedures that would assure the "rapid conveyance of exculpatory evidence to the district attorney, judge, magistrate and defense counsel" and by failing to institute such procedures, the City denied Rock of his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments.

Because the Court finds that Lowe's actions did not deprive Rock of any Constitutional rights, there is no underlying constitutional injury that can serve as the basis for a claim against the remaining Defendants. *Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986). This Court surely cannot hold that the Mayor's and City Aldermen's alleged failure to establish procedures to ensure exculpatory information is provided to prosecutors in a timely fashion caused Rock to suffer a constitutional deprivation when no such deprivation occurred. *Linder v. Richmond County*, 844 F.Supp. 764 (S.D.Ga.1994).

### B. State Claim

In Count III Rock alleges that he was deprived of his due process rights under Article I, Section 1, Paragraphs I, XIII, XVII of the Georgia Constitution. As there are no remaining federal causes of action, the Court declines to address these supplemental state claims. *Burns–Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir.1994).

### V. Conclusion

Because the Plaintiff has failed to raise a genuine issue of material fact as to the Federal claims in this case, the Court **GRANTS** Defendants' motion for summary judgment on those claims. The Court dismisses the remaining state law claims.

This decision should not be read to condone improper police or prosecutorial conduct. Such improprieties are insidious and injure the effectiveness of the judicial system as a whole. The Court simply finds that the Plaintiff in this case was not injured by any action taken by the Defendants.

SO ORDERED.