Gretchen CHIPPERINI, Plaintiffs,

v.

Kelly CRANDALL and John
W. Varone, Defendants.

No. CIV.A.3:00 CV 345(CF).

United States District Court,
D. Connecticut.

March 26, 2003.

Peter Adlai Berdon, Berdon, Young & Margolis, New Haven, CT, Eugene C. Cushman, New London, CT, for Plaintiff.

James J. Szerejko, Halloran & Sage, Hartford, CT, for Defendants.

## RULING ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DRONEY, District Judge.

The plaintiff, Gretchen Chipperini, brought this action against Kelly Crandall and John W. Varone, officers of the Groton Police Department, pursuant to 42 U.S.C. § 1983, alleging deprivation of her constitutional rights arising out of her arrest. Chipperini also asserts related Connecticut state law claims of malicious prosecution, intentional infliction of emotional distress, negligence, and state constitutional claims.[1] Pending is the defendants' Motion for Summary Judgment [Doc. # 31]. For the following reasons the motion is GRANTED in part and DENIED in part.

### I. Background [2]

In July of 1995 Richard A. Harl rented a lot for his mobile home at the Pleasant Valley Mobile Home Park in Groton, Connecticut, from Chipperini, who operated the park with her parents. Chipperini commenced eviction proceedings in state court against Harl in late December 1996 for nonpayment of rent and obtained a judgment in her favor, subject to a stay of execution. The subsequent eviction order, dated June 16, 1997, provided that Chipperini was to have possession of the premises as of June 23, 1997 at 9:00 a.m. The defendants claim that prior to that time Chipperini removed the skirting around

---

1. This action was properly removed to this Court from the Connecticut Superior Court pursuant to 28 U.S.C. § 1441. Personal jurisdiction is not disputed.

2. The following facts are drawn from the complaint, the parties' motion papers and attached exhibits, and the parties' Local Rule 9(c) statements. All disputed facts are indicated.

the mobile home and the stairs leading up to it, disconnected the water and the oil service, and dug out the wheel hubs. Chipperini denies most of these allegations, although she does concede that the skirting was removed.

Pursuant to a request by Harl, the defendant police officers Crandall and Varone initiated an investigation into whether Chipperini had committed a "criminal lockout" of Harl in violation of Conn. Gen.Stat. § 53a–214.[3] The investigation occurred from June 1997 until May 1998 and culminated in the issuance of an arrest warrant for Chipperini by a Judge of the Connecticut Superior Court based on a violation of the criminal lockout statute, which was executed on May 22, 1998. The charge was dismissed by the Superior Court in December 1998.

Chipperini asserts that the defendants' investigation did not uncover facts supporting a charge of criminal lockout because 1) she was not a "landlord" within the meaning of Conn. Gen.Stat. § 53a–214 and 2) even if she was such a landlord, she was in possession of a court eviction order, thereby shielding her from prosecution. In support of her argument that the defendants knew or should have known that she did not fall within the criminal lockout statute, Chipperini contends that Varone was involved with her previous arrest on the same charge (involving a person other than Harl), which had been dismissed, and that neither defendant had followed the legal materials provided to Crandall by Chipperini's lawyer before her arrest, which showed that the criminal lockout statute did not apply to her. Finally,

Chipperini asserts that the defendants intentionally withheld important information from the Superior Court Judge that issued the arrest warrant and that a warrant would not have been issued if such information had been disclosed to the Judge.

The defendants have moved for summary judgment on several grounds. With regard to the first and second counts of the amended complaint, which allege common law malicious prosecution, the seventh and eighth counts, which allege violations of the U.S. Constitution, and the eleventh and twelfth counts, which allege violations of the Connecticut Constitution, the defendants assert that they are entitled to summary judgment on the basis of qualified immunity. As to the third and fourth counts, which allege that material information was withheld from the Judge that issued the arrest warrant, the defendants assert that the plaintiff "has made no independent" claim. Regarding the ninth and tenth counts asserting negligence, the defendants claim that, if the Court concludes that they are entitled to qualified immunity on the basis that their actions were objectively reasonable, then as a matter of law they could not have been negligent. Finally, the defendants claim they are entitled to summary judgment on the fifth and sixth counts alleging intentional infliction of emotional distress because there is no genuine issue of material fact that either defendant acted intentionally to inflict emotional distress on Chipperini.

After discussing the standard to be applied in addressing the summary judgment motion, the Court will first address the counts alleging federal constitutional viola-

---

**3.** Connecticut General Statute § 53a–214 provides, in its entirety:

(a) A landlord of a dwelling unit subject to the provisions of chapter 830, an owner of such unit, or the agent of such landlord or owner is guilty of criminal lockout when,

without benefit of a court order, he deprives a tenant, as defined in subsection (*l*) of section 47a–1, of access to his dwelling unit or his personal possessions.

(b) Criminal lockout is a class C misdemeanor.

tions, then the other counts challenged by the motion.

## II. Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.' " *Miner v. City of Glens Falls*, 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992).

## III. Analysis

A. *Counts Seven and Eight; Violation of 42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 provides that any person who, acting under color of law, "subjects or causes to be subjected, any Citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws" of the United States shall be liable to the injured party in actions at law. 42 U.S.C. § 1983. In the Seventh and Eighth Counts of the Amended Complaint [Doc. # 21], Chipperini asserts that, in violation of Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, "the defendants deprived her of her right to be free from unreasonable arrest, unreasonable search and seizure, malicious prosecution and the deprivation of due process of law." Amended Compl. [Doc. # 21]. Thus, Chipperini clearly asserts that her right to be free from malicious prosecution, which is derived from the Fourth Amendment, was violated, *see Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir.2002) ("[T]o prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment."), and that her right to be free from false arrest, also derived from the Fourth Amendment, was also violated. *See Caldarola v. Calabrese*, 298 F.3d 156, 161 (2d Cir.2002) (" § 1983 claim for false arrest derives from an individual's right to remain free from unreasonable seizures.") More confusing, however, is Chipperini's contention that her arrest constituted a "deprivation of due process of law." The Court interprets Chipperini's invocation of "due process" as an acknowledgment that the Fourth Amendment rights she asserts, to be free from false arrest and malicious prosecution, is applied

to the states through the Due Process clause of the Fourteenth Amendment, and not a separate and additional constitutional claim. *See Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (false arrest claim under § 1983 to be judged under Fourth Amendment and not under Fourteenth Amendment substantive due process).

### 1. *False Arrest and Malicious Prosecution*

"A § 1983 false arrest claim requires the plaintiff to establish that (1) the defendant intentionally arrested him or had him arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supported by probable cause." *See Arum v. Miller,* 193 F.Supp.2d 572, 585 (E.D.N.Y. 2002) (citing *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1998)); *United States v. Ceballos,* 812 F.2d 42, 50 (2d Cir.1987)).

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment ... and establish the elements of a malicious prosecution under state law." *Fulton v. Robinson,* 289 F.3d 188 (2d Cir.2002) (internal citations omitted). Under Connecticut state law, to establish malicious prosecution, the plaintiff must demonstrate the

"initiation or procurement of the initiation of criminal prosecution with malice for a purpose other than bringing an offender to justice; that the defendant acted without probable cause, and the criminal proceedings terminated in favor of the plaintiff." *Clark v. Town of Greenwich,* No. CV00177986, 2002 WL 237854, at *3 (Conn.Super.Jan.24, 2002); *see also QSP, Inc. v. Aetna Casualty and Surety Co.,* 256 Conn. 343, 361, 773 A.2d 906 (2001) (holding that in malicious prosecution or vexatious litigation suit "it is necessary to prove want of probable cause, malice and a termination of [the] suit in the plaintiffs' favor") (citations and internal quotation marks omitted).[4]

Hence, if probable cause existed for her arrest, Chipperini cannot satisfy the elements of either a false arrest claim or a malicious prosecution claim under § 1983. "The threshold issue for the Court is whether, on the facts alleged, [the plaintiff's] right to be free from arrest without probable cause was violated. This question is primary both for a § 1983 false arrest or malicious prosecution analysis ...[because] the existence of probable cause is a complete defense to a civil rights claim alleging false arrest or malicious prosecution." *Garcia v. Gasparri,* 193 F.Supp.2d 445, 449 (D.Conn.2002) (citing *Curley v. Village of Suffern,* 268 F.3d 65, 69–70 (2d Cir.2001)). As noted above, the

---

4. "In order to allege a cause of action for malicious prosecution under § 1983, [a plaintiff] must assert, in addition to the elements of malicious prosecution under state law, that there was ... a sufficient post-arraignment liberty restraint to implicate the plaintiff's fourth amendment rights." *Rohman v. New York City Transit Auth.,* 215 F.3d 208, 215 (2d Cir.2000) (citing *Murphy v. Lynn,* 118 F.3d 938, 944–46 (2d Cir.1997)). "The fourth amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person-i.e., the right to be free of unreasonable or unwarrant-

ed restraints on personal liberty. A plaintiff asserting a fourth amendment malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of 'seizure.'" *Id.* (quoting *Singer,* 63 F.3d at 116, and citing *Murphy,* 118 F.3d at 944). "[S]ince the gist of a claim for malicious prosecution is abuse of the judicial process, a plaintiff pursuing such a claim under § 1983 [also] must show that the seizure resulted from the initiation or pendency of judicial proceedings." *Id.* (citation omitted).

defendants assert that they are entitled to qualified immunity for Chipperini's § 1983 claims. This defense is directed to the probable cause element of both the malicious prosecution claim and the false arrest claim. The defendants are seeking a determination that as a matter of law their conclusion that there was probable cause to support Chipperini's arrest was protected by qualified immunity. If the defendants are entitled to qualified immunity for that decision, then they would be entitled to summary judgment on Chipperini's § 1983 claims.

### 2. *Qualified Immunity*

The law of qualified immunity is well settled in the Second Circuit:

Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial lawsuits. Government actors performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act. The objective reasonableness test is met-and the defendant is entitled to qualified immunity-if officers of reasonable competence could disagree on the legality of the defendant's actions.

*Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir.1995) (citations and internal quotation marks omitted). The *Lennon* Court "rec-

ogniz[ed] the apparent anomaly of holding that summary judgment is appropriate when a trier of fact would find that reasonable officers could disagree." *Id.* at 421. However, the Court reasoned, "in qualified immunity cases, we are not concerned with the correctness of the defendants' conduct, but rather the 'objective reasonableness' of their chosen course of action." *Id.; see also Brogdon v. City of New Rochelle*, 200 F.Supp.2d 411, 424 (S.D.N.Y.2002) ("On a motion for summary judgment, the issue is whether a reasonable police officer would have known that what he was doing was clearly illegal based on the facts before him."). Indeed, because one of the articulated purposes of qualified immunity is to prevent "fear of personal monetary liability and harassing litigation" from interfering with government officials' duties, "the identification and disposal of insubstantial claims by summary judgment is encouraged." *Lee v. Sandberg*, 136 F.3d 94, 101–02 (2d Cir.1997) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (internal quotation marks omitted); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (the qualified immunity entitlement is an *"immunity from suit* rather than a mere defense to liability ... [it] is effectively lost if a case is erroneously permitted to go to trial.").

■ In determining whether a particular right was "clearly established" for purposes of assessing a claim of qualified immunity, the Second Circuit has instructed District Courts to consider three factors:

(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant

official would have understood that his or her acts were unlawful. *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991). Here, there is no question that Chipperini has a Constitutional right, broadly defined, not to be arrested without probable cause, and the law is clearly established on that point. *See Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 128 (2d Cir.1997) (right not to be arrested without probable cause is clearly established); *Oliveira v. Mayer,* 23 F.3d 642, 648 (2d Cir.1994) (same). However, the Court's inquiry into the existence of a clearly established right requires a more narrow scope. "[A court] must consider whether a reasonable officer could have believed that the *specific action taken by [the defendant]* was foreclosed by clearly established law." *Caldarola v. Calabrese,* 298 F.3d 156, 161 (2d Cir.2002) (emphasis added); *see also Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition."). Finally, even if this Court were to determine that the officers' conduct in seeking and effectuating Chipperini's arrest did violate clearly established law, they are still entitled to qualified immunity if it was objectively reasonable for them to believe that their actions did not violate a clearly established right:

> [T]he individual [defendants] enjoy qualified immunity ... if at the time of the pertinent episode it was not clear that the actions they took violated established constitutional rights, or if it was objectively reasonable for them to believe that their actions did not violate such rights as were then clearly established.

*van Emrik v. Chemung County Dep't of Soc. Servs.,* 911 F.2d 863, 865–66 (2d Cir. 1990). Thus, the defendants are entitled to qualified immunity if 1) the law governing their conduct was not clearly established or 2) it was objectively reasonable for officers in their position to believe the circumstances gave rise to probable cause for an arrest.

### a. *Clearly Established Right*

As noted above, the defendants are entitled to qualified immunity if they did not violate Chipperini's "clearly established" rights when they arrested her. Defining the right narrowly, as directed by the Second Circuit in *Caldarola,* the appropriate analysis is whether it was clearly established that the criminal lockout statute did not apply to mobile home park operators such that Chipperini's arrest for violation of this statute would violate her Fourth Amendment rights.

■ To determine whether the law is "clearly established" for qualified immunity purposes, courts ordinarily must consider "whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question." *Shechter v. Comptroller of New York,* 79 F.3d 265, 271 (2d Cir.1996) (quoting *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) (quotation marks omitted). Similarly, the Second Circuit has held that the law cannot be "clearly established" for qualified immunity purposes by district court opinions, but only by the decisions of circuit courts or the Supreme Court. "[A] district court decision does not 'clearly establish' the law even of its own circuit, much less that of other circuits. Although district judges within a particular circuit will frequently find each other's opinions persuasive, they remain free to disagree." *Hawkins v. Steingut,* 829 F.2d 317, 321 (2d Cir.1987). Here, of course, the analysis is slightly different, as the question of whether Chipperini's Fourth Amendment rights were violated turns on an analysis of *state,* rather than federal, law and it is the state

courts' interpretation of the law that is most significant. *Campbell v. Peters*, 256 F.3d 695 (7th Cir.2001), is helpful in guiding the analysis here. In *Campbell*, the Seventh Circuit considered a qualified immunity defense that turned on the interpretation of Illinois state law. The plaintiff in that case asserted that his Eighth Amendment rights had been violated when he was held beyond the term of his prison sentence contrary to a state statute. *See* 256 F.3d at 700. In its qualified immunity analysis, the court held that "we must determine whether it was clearly established that the defendants ... were violating [plaintiff's] constitutional rights by requiring him to serve more time than state law and his sentence required." *Id.* at 700–01. In rejecting the plaintiff's argument that a state trial court's interpretation of the statute was dispositive (because the decision had been issued after the relevant conduct had occurred) the court observed that "it is doubtful whether one unpublished state trial court's decision can 'clearly establish' the law for qualified immunity purposes. (We have held that a district court decision does not have such weight ... and so by parity of reasoning it is at least unclear whether a state trial court decision would carry such weight.)") *Id.* at 701 (citations omitted).

Chipperini claims that it was clearly established that the Connecticut criminal lockout statute did not apply to leases of lots for mobile homes. She argues that a plain reading of the statute clearly supports this position. She also points to her prior arrest for criminal lockout, which was dismissed, as an indication that it was "clearly established" that the law did not apply to mobile home parks. Finally,

Chipperini points to *Ossen v. Kreutzer*, 19 Conn.App. 564, 563 A.2d 741 (1989), where the Connecticut Appellate Court held that a specific provision of chapter 830 of the Connecticut General Statutes concerning landlords and tenants did "not apply to proceedings involving mobile home parks." *Ossen*, 563 A.2d at 744. According to Chipperini, *Ossen* establishes that mobile home park operators are not "landlords" under chapter 830 and therefore not subject to the criminal lockout prohibition of § 53a–214.

While *Ossen* does offer support for Chipperini's position, it is not clear whether a single Connecticut Appellate Court decision-one that does not even mention the criminal lockout statute-is enough to "clearly" establish that the criminal lockout statute does not apply to mobile home parks. In *Saucier*, the Supreme Court held that the law is "clearly established" if "*various courts* have agreed that certain conduct is a constitutional violation *under facts not distinguishable* in a fair way from the facts presented in the case at hand ..." 533 U.S. at 202, 121 S.Ct. 2151. (emphasis added). Chipperini has offered only one opinion-albeit from the Connecticut Appellate Court-as "clearly establishing" her right not to be arrested for criminal lockout under the circumstances. More important, though, *Ossen* is easily distinguished from the situation here. While *Ossen* does deal with an interpretation of Chapter 830, it does not directly concern the issue of whether the criminal lockout statute applies to mobile home park operators under the undisputed facts here.[5]

---

**5.** Notably, at least one Connecticut Superior Court has held that some portions of Chapter 830 apply to mobile home parks, reasoning that "the legislature intended the mobile home statutes ... to be supplementary and not to supplant" the basic landlord-tenant statutory regime. *Rivermead, Inc. v. Cahill*, No. SP–H–8003–5300 EH, 1980 WL 128106, at *1 (Conn.Super. June 23, 1980).

■ While it could be agreed that *Ossen* alone might not be enough to "clearly establish" the law for qualified immunity purposes, there is another source of Connecticut law that does clearly establish that the criminal lockout could not have been applied to Chipperini, and that her arrest for violation of that provision may have violated her Fourth Amendment rights: Connecticut statutes expressly provided that the criminal lockout statute *could not* have applied to Chipperini. The criminal lockout statute indicates that it is applicable only to landlords "subject to the provisions of chapter 830.[6]" Chapter 830 provides that "except as otherwise provided in chapter 412 or in this chapter, *this chapter shall not apply to the rental of a space or lot in a mobile manufactured home park by a resident of a mobile manufactured home in such a park who is also the owner of such mobile manufactured home.*" Conn. Gen.Stat. § 47a–2(b) (emphasis added). It is undisputed that Harl owned the mobile home at issue. Thus, because 1) the criminal lockout statute by its terms applies only to landlords within chapter 830 and 2) leases for lots of land in mobile manufactured home parks by owners of mobile homes are not covered by chapter 830, it was clearly established that the criminal lockout statute could not have applied to Chipperini. While most cases defining the analysis of the "clearly established" right focus on whether decisional law adequately defines the contours of the right at issue, statutes can certainly also be a source. As the Supreme Court has indicated, "[t]he salient question ... is whether the state of the law ... gave [the officers] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2516, 153 L.Ed.2d 666 (2002). The precise language of the Connecticut statutes indicate that the arrangement between Harl and Chipperini-"the rental of a space or lot in a mobile manufactured home park by a resident of a mobile manufactured home in such a park who is also the owner of such mobile manufactured home"-could not have given rise to a charge of criminal lockout by Chipperini.

### b. *Objectively Reasonable*

Having determined that the law was clearly established for qualified immunity purposes, the court is left with the second prong of the qualified immunity analysis: was it objectively reasonable (based on undisputed facts) for the officers to believe they were not violating clearly established law by arresting Chipperini? Each defendant will be examined individually. *See Loria v. Gorman,* 306 F.3d 1271, 1281–93 (2d Cir.2002) (undertaking separate qualified immunity analysis as to each defendant).

### c. *Defendant Crandall*

■ The defendants have not demonstrated that there are no genuine issues of material fact regarding whether it was objectively reasonable for Crandall to have believed she was not violating Chipperini's clearly established rights by arresting her for criminal lockout. Indeed, the warrant application itself, which was prepared by Crandall, indicates that Harl was the owner of the mobile home and that he rented the plot for it from Chipperini-precisely the situation removed from the criminal lockout statute by the operation of Conn. Gen.Stat. § 47a–2(b). *See* Conn. Gen.Stat. §§ 53a–214; 47a–2(b).

### d. *Defendant Varone*

Nor does the record support a conclusion that there is no genuine issue of mate-

---

6. Conn. Gen.Stat. § 47a–1, et seq.

rial fact as to whether Varone had an objectively reasonable basis for believing that there was probable cause to arrest Chipperini for criminal lockout. Although it was Crandall that applied for the warrant, the defendants concede in their memorandum in support of their motion for summary judgment that "Varone ... assisted Officer Crandall in this investigation and in preparation of the warrant for the plaintiff's arrest." Def.'s Mem. in Supp.of Mot. for Summ. J. [Doc. # 33], at 4.

### 3. The Arrest Warrant

Also relevant to the qualified immunity analysis is the fact that a warrant for Chipperini's arrest was issued by a Connecticut Superior Court Judge. In *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the U.S. Supreme Court held that police officers may be entitled to qualified immunity for arrests based on warrants issued by a judge or magistrate. The Court explained that the issue is "whether a reasonably-trained officer in [the defendants'] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345, 106 S.Ct. 1092. It concluded that the officer "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer could have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.* at 341, 106 S.Ct. 1092. *See also Rock v. Lowe*, 893 F.Supp. 1573, 1579 (S.D.Ga.1995) ("[Q]ualified immunity does not protect a police officer who seeks a warrant on the basis of an affidavit that does not show reasonably objective probable cause-even if the magistrate erroneously issues the warrant.")

(citing *Kelly v. Curtis*, 21 F.3d 1544, 1555 (11th Cir.1994)).

For the reasons discussed above, the Connecticut law was clearly established notwithstanding the issuance of the warrant and there is a least a genuine issue of material fact as to whether reasonably well-trained officers in the defendants' position would have known that the warrant application failed to establish probable cause for an arrest. Thus, the defendants are not entitled to summary judgment on qualified immunity grounds based on *Malley.*

For the foregoing reasons, the defendants' motion for summary judgment as to counts seven and eight of the amended complaint for § 1983 malicious prosecution and false arrest on the basis of qualified immunity is DENIED.

### B. Counts One and Two

■ With regard to counts one and two (the state common law malicious prosecution counts), as indicated above, there are three elements of a common law malicious prosecution claim: "want of probable cause, malice, and a termination of [the] suit in the plaintiff's favor." *QSP, Inc. v. Aetna Casualty and Surety Co.*, 256 Conn. 343, 361, 773 A.2d 906 (2001) (citations and internal quotation marks omitted). The Court has determined that there was not probable cause to support the arrest and it is undisputed that the criminal charges brought against Chipperini were terminated in her favor. As to the final element, there are genuine issues of material fact as to whether either of the defendants acted with malice. Therefore, the defendants' motion for summary judgment is also DENIED as it applies to counts one and two.[7]

---

7. Defendants argue that the state common law malicious prosecution counts (one and

two) are also subject to a qualified immunity analysis. Whether that is correct or not, the

## C. Counts Three and Four

██ Counts three and four assert that the defendants "knowingly and intentionally and maliciously withheld and concealed from the judge to whom the [arrest warrant] application was submitted." The language in these counts invokes *Franks v. Delaware* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Under *Franks,* a defendant can overcome the presumption of probable cause afforded by a warrant by demonstrating that 1) the affiant either intentionally or with reckless disregard for the truth made a false statement in his warrant application and 2) the neutral magistrate would not have issued the warrant but for the false statement. *See Franks,* 438 U.S. at 155–56, 98 S.Ct. 2674. In the civil context, a *Franks* showing can be used to undermine the presumption of qualified immunity afforded by a warrant. However, as the defendants correctly point out, *Franks* does not support an independent cause of action. While a *Franks* analysis may prove useful in later stages of these proceedings in relation to the merits of Chipperini's other claims, it cannot stand alone as a separate cause of action. Thus, the defendants' motion for summary judgment is GRANTED as to counts three and four of the amended complaint, but without prejudice to raising these issues under other counts of the complaint.

## D. Counts Eleven and Twelve

The defendants have also failed to demonstrate that there is no genuine issue of material fact as to the Connecticut constitutional claims asserted in the eleventh and twelfth counts pursuant to *Binette v. Sabo,* 244 Conn. 23, 45–46, 710 A.2d 688 (1998) (creating *"Bivens-*type" private right action for violations of article first §§ 7 and 9). Article First, Section 7 of the Connecticut Constitution provides for

conclusion for counts seven and eight as to

protection from unreasonable search and seizure and section 9 provides that "No person shall be arrested, detained or punished, except in cases clearly warranted by law." The defendants assert that they are entitled to summary judgment on this count because there was probable cause for Chipperini's arrest. But, as noted previously, the defendants have not demonstrated that there was no genuine issue of material fact regarding the existence of probable cause. Therefore, the defendants' motion for summary judgment is DENIED as to the eleventh and twelfth counts of the amended complaint.

## E. Counts Nine and Ten

██ The defendants are entitled to summary judgment on Chipperini's common law negligence claim on the basis of governmental immunity. Governmental immunity operates to shield municipal officers from liability in the exercise of discretionary acts. *See Evon v. Andrews,* 211 Conn. 501, 559 A.2d 1131, 1133–34 (1989) ("A municipal employee however, has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act") (citations omitted); *Fanfarelli v. City of West Haven,* No. 990430429S, 2002 WL 31662344, at *5 (Nov. 7, 2002 Conn.Super.) ("Municipal employees are generally immune from suits when exercising discretionary rather than ministerial duties."). The doctrine is applicable to municipal police officers, see *Fanfarelli,* 2002 WL 31662344, at *5, and seeking an arrest warrant is a discretionary act. *See Elinsky v. Marlene,* No. CV960557659, 1997 WL 729102, at *5 (Nov. 14, 1997 Conn.Super.) The governmental immunity doctrine is subject to three exceptions:

qualified immunity controls.

The immunity from liability for the performance of discretionary acts by a municipal employee is subject to three exceptions or circumstances under which liability may attach even though the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm ... second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws ... and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence.

*Evon,* 559 A.2d at 1134 (Conn.1989) (citations omitted). The first exception, known as the identifiable person-imminent harm exception, is the only one relevant here. However, although Chipperini meets the "identifiable person" test because it would certainly be foreseeable to the defendants that if the arrest were improper she would suffer harm, see *Elinsky,* 1997 WL 729102, at *7 (citing *LaRochelle v. Town of Waterford,* No. 106935, 1995 WL 527498 (Aug. 29, 1995 Conn.Super.), she does not meet the second test of "imminent harm" under Connecticut law. Although this exception to governmental immunity is not well developed in Connecticut law it appears that the type of harm required is physical harm or personal danger, not the results of a wrongful arrest. *See Elinsky,* 1997 WL 729102, at *7 ("[T]he plaintiff's complaint [alleging negligence leading to an erroneous arrest] fails to allege sufficient facts demonstrating that he was subject to imminent harm."); *Gonzalez v. City of Bridgeport,* No. CV88253464, 1993 WL 197874, at *3 (June 2, 1993 Conn.Super.) ("The exception has only been extended to encompass situations of personal danger to an identifiable person."). Although the reasoning in these decisions is not entirely

clear, it appears to be consistent with construing exceptions to governmental immunity for discretionary acts of public officials narrowly. *But see Mikita v. Barre,* No. CV990430564, 2001 WL 651171, at *4 (May 22, 2001 Conn.Super.)) (finding genuine issues of fact as to the identifiable person-imminent harm exception precluded summary judgment based on governmental immunity where victim of wrongful arrest had the same name as the person identified in the arrest warrant); and *Gooden v. Thomas,* No. CV 950322849, 1998 WL 46677, at *5 (Jan. 28, 1998 Conn.Super.) (denying summary judgment for negligence claim arising from alleged wrongful arrest based on governmental immunity and finding disputed issues of fact as to the application of the imminent harm exception). Because the decision to arrest Chipperini was a discretionary act, and because none of the various exceptions applies, the defendants are entitled to governmental immunity on the plaintiff's negligence claims. Therefore, the defendants' motion for summary judgment is GRANTED as to the ninth and tenth counts of the amended complaint.

### F. Counts Five and Six

█ The fifth count of the amended complaint alleges that Crandall "knew or should have known that her said acts or omissions would cause the plaintiff to suffer great and severe mental and emotional distress, pain and anguish." The sixth count asserts the same allegation against Varone. There are four elements that a plaintiff must establish in order to recover on a claim of intentional infliction of emotional distress under Connecticut law:

(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was likely the result of his conduct; (2) that the conduct was extreme and

outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

*Appleton v. Bd. of Educ. of Stonington,* 254 Conn. 205, 210, 757 A.2d 1059 (2000). The defendants assert that "[t]here obviously was no intentional conduct by these defendants to inflict emotional distress..." Def.'s Mem. in Supp. of Mot. for Summ. J. [Doc. # 33], at 18. However, the defendants have not demonstrated that there is no genuine issue of material fact as to this element. Viewing the evidence in a light most favorable to the non-moving party, the record could support an inference that either Crandall or Varone acted intentionally in arresting Chipperini without probable cause. Specifically, the plaintiff has raised genuine issues as to 1) whether the prior proceedings against Chipperini were dismissed because the criminal lockout statute did not apply to her (and whether Crandall or Varone were aware of that reason) and 2) whether the materials provided to Crandall by Chipperini's attorney should have alerted the defendants that there was not probable cause to arrest Chipperini for criminal lockout.

For the forgoing reasons, the motion for summary judgment is DENIED as to the fifth and sixth counts of the amended complaint.

## IV. Conclusion

For the preceding reasons, the defendants' motion for summary judgment [Document # 29] is GRANTED as to counts three, four, nine, and ten of the amended complaint and DENIED as to counts one, two, five, six, seven, eight, eleven, and twelve.