Ronald **FRANKLIN** and Ramona Franklin, individually and on behalf of all others similarly situated, Plaintiffs,

v.

**COUNTY OF DUTCHESS** and Sheriff Adrian H. Anderson, Defendants.

No. 03 Civ. 719(CM)(LMS).

United States District Court, S.D. New York.

Jan. 27, 2005.

---

James Edward Monroe, Dupee, Dupee & Monroe, P.C., Goshen, NY, for Plaintiffs.

David L. Posner, McCabe & Mack, L.L.P., Poughkeepsie, NY, for Defendants.

DECISION DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, DENYING DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT ON THE MERITS, AND GRANTING IN PART AND DENYING IN PART DEFENDANT ANDERSON'S CROSS–MOTION FOR DISMISSAL ON QUALIFIED IMMUNITY GROUNDS

MCMAHON, District Judge.

*The Relevant Allegations of the Complaint*

Plaintiff Ronald Franklin was admitted to the Dutchess County Jail ("DCJ") on April 4, 2002. He was charged with a misdemeanor or non-criminal offense (failure to pay a fine on a prior charge of aggravated unlicensed operation of a motor vehicle) but had a prior felony conviction on his record (attempted burglary in the second degree in 1986). Upon his admission, he alleges that he was subjected to a strip search that included an inspection of his genitalia and body cavities.

Plaintiff Ramona Franklin was admitted to the DCJ on May 15, 2001. She was admitted on a felony warrant charging her with a probation violation for allegedly failing to pay restitution following her conviction for felony Medicaid Fraud. She was trying to get information about the outstanding warrant when she was arrested and transported to the jail. Upon admission, she alleges that she was subjected to a strip search that included an inspection of her genitalia and body cavities. She was menstruating at the time.

The Franklins sued the County and the Sheriff, Andrian Anderson, alleging that the County has a policy or practice of subjecting all newly-arrived pre-trial detainees at the DCJ to a strip search. The complaint alleges, at paragraph THIRTIETH, that "Defendants ... uniformly strip searched all pre-trial detainees admitted to the Dutchess County Correctional Facility irrespective of the offense charged, characteristics of the arrestee or individualized reasonable suspicion to believe that the arrestee was in the possession of drugs, weapons or contraband ..." In their complaint, they specifically allege the existence of a written policy, SOP § 44, which they contend requires that each pre-trial detainee be strip searched without any individualized basis to believe the detainee might be in possession of drugs, weapons or contraband. They seek certification of two subclasses: one of persons who were admitted to the DCJ after being arrested for a misdemeanor or non-criminal offense, and one of persons who were admitted to the DCJ after being arrested for a felony.[1]

Plaintiffs have moved for class certification. Defendants cross-move for summary

---

1. Originally, plaintiffs sought declaratory and injunctive relief and certification of a Rule 23(b)(2) class as well as damages and certification of a Rule 23(b)(3) class. Following the Second Circuit's decisions in *Shain v. Ellison*, 356 F.3d 211 (2d Cir.2004)(*Shain II*) and *Dodge v. County of Orange*, 103 Fed.Appx. 688 (2d Cir.2004), plaintiffs have limited their claims to damages and their proposed class to a(b)(3) class.

judgment on the issue of liability. I deny both motions.

*The Admissions Search Policy*

The County's stated policy (i.e., its policy "on paper") is memorialized in SOP § 44 (or, as defendants refer to it, Policy and Procedure § 44).

There are several categories of searches outlined in SOP § 44. The first is a "frisk" or "pat" search, which is conducted when inmates leave and return to housing units and whenever an officer suspects possession of contraband. The second is denominated as a "strip search." The method for conducting a proper strip search is set forth at SOP § 44.03(b):

> In order to perform a proper strip search the officer will instruct the inmate to:
>
> (1) Remove all items of clothing including undergarments and socks;
>
> (2) Turn socks, clothing pockets, etc., inside out;
>
> (3) Run fingers through hair. (Hairpieces or wigs should be removed and placed in the inmate's personal property)
>
> (4) Open mouth, lift tongue, and remove false teeth or bridgework
>
> (5) Lift arms above head, show the backs and palms of hands
>
> (6) Slowly turn around to allow the officer to visually inspect the torso and legs.
>
> (7) Lift breasts or other skin folds that might conceal contraband; and
>
> (8) With the inmate's back to the officer, raise on foot then the other so that the bottom of each foot is visible.

It was "recommended" that officers conducting such searches wear gloves, masks and protective garments. (SOP § 44.03(A)).

Pursuant to criteria promulgated on or about January 25, 1997, SOP § 44.04 called for a § 44.03 strip search to be to be conducted on all newly arrived pre-trial detainees who were charged with any felony, misdemeanor drug or weapons charges, or who had a prior felony conviction regardless of the charge on which they were being detained. Such searches were also to be performed on persons who expressed suicidal tendencies, who admitted to possessing contraband, who were serving intermittent sentences, and who failed to clear a frisk or electronic search. The County admits that, in all such cases, "There was no requirement than an individual assessment be made of 'reasonable suspicion' to believe the individual was concealing contraband or weapons." *See* Defendants' Moving Br. at 5.

Effective October 1, 2002, SOP § 44 was amended to eliminate the requirement that strip searches be carried out on individuals accused of misdemeanors who had a prior felony conviction or felony arrestees where the charge was felony DWI.

If an officer had reasonable cause to believe that someone who did not fit within one of those criteria possessed contraband, he was required to notify a supervisor before conducting a strip search, and to document the basis for his suspicions.

The pre-October 2002 policy does not say anything about exposing the anal area or displaying genitalia, although "other skin folds that might conceal contraband" could include genitalia. The recommendation to use gloves and a mask admits an inference that this was not intended to be a "hands off" search. The post-October 2002 policy, however, specifically states that the anal area and genitalia are not to be inspected.

*Which Motion to Consider First*

■ Plaintiffs argue that this court should consider their motion for class certification prior to giving any consideration to the motion for summary judgment. I agree. Class certification motions are to be decided with regard to a searching analysis of the requirements of Rule 23. But these factors are to be measured against the well-pleaded allegations of the complaint. The merits of the underlying claims are irrelevant and the court is not to consider them either as favoring or disfavoring class certification.

I will therefore turn first to the plaintiffs' motion for class certification.

**Plaintiffs' Motion for Class Certification**

■ Plaintiffs seek the certification of two subclasses of pre-trial detainees at DCJ. They identify the proposed sub-classes as:

(A) all felony detainees who were remanded to the custody of the Dutchess County Jail on or after January 31, 2000 and strip searched upon their admission to this jail in

the absence of individualized reasonable suspicion to believe that they were in possession of drugs, weapons or contraband; and

(B) all non-felony detainees who were remanded to the custody of the Dutchess County Jail on or after January 31, 2000 and strip searched upon their admission to this jail in the absence of individualized reasonable suspicion to believe that they were in possession of drugs, weapons or contraband.

There is a real difference between alleging, "I was strip searched without reasonable suspicion to believe I was carrying contraband," and, "I was strip search pursuant to a policy of searching everyone without reasonable suspicion to believe they were carrying contraband." The latter may be amenable to class certification; the former is almost certainly not. Therefore, plaintiffs' proposed classes could be certified as described in the Notice of Motion.

However, it is clear from reading the complaint and all the papers filed in support of the motion for class certification that what plaintiffs really seek is certification of two parallel subclasses of pre-trial detainees as follows:

(A) all felony pre-trial detainees who were remanded to the custody of the Dutchess County Jail on or after January 31, 2000 and who were strip searched upon admission pursuant to a policy of strip searching all persons accused of felony crimes without regard to the existence of individualized reasonable suspicion to believe that they were in possession of drugs, weapons or other contraband. (Class representative: Ramona Franklin)

(B) all misdemeanor pre-trial detainees and persons detained on other than criminal charges who were remanded to the custody of the Dutchess County Jail on or after January 31, 2000 and who (i) had previously been convicted of a felony, and (ii) were strip searched upon admission pursuant to a policy of strip searching all persons who had previously been convicted of any felony, without regard to the existence of individualized reasonable suspicion to believe that they were in possession of drugs, weapons or other contraband (Class representative: Ronald Franklin).

I will assume that plaintiffs intended to move for certification of classes so described.

Were I to perform a full Rule 23(a) and (b)(3) analysis on these suggested classes, going factor by factor, much of what I would say here would mirror my opinion in *Dodge v. County of Orange* (02 Civ. 769) and *Rango v. County of Orange* (02 Civ. 8451)("*Dodge/Rango* "), which is being decided concurrently with this motion. It will save everyone a lot of time if I simply turn to the determinative issue: whether there are common questions concerning liability that predominate over the individualized issues touching on damages.

As noted above, at all relevant times, the DCJ admits to the existence of a policy of searching all new arrivals in certain classes of persons—including persons accused of felonies and persons accused of non-contraband-related misdemeanors who had prior felony convictions of any sort—without regard to the existence of individualized reasonable suspicion that the person was carrying contraband. Because defendants admit to the existence of a class-wide policy of strip searching (the "common question" that predominates in *Dodge/Rango* ) there is nothing for a court or a jury to decide on that score. Any individual meeting those descriptions who was admitted to DCJ can take advantage of the doctrine of judicial estoppel[2] to establish the fact that no individualized assessment was made of his/her situation upon admission. At least for persons detained on a non-contraband-related misdemeanor charge, as to whom Second Circuit law is crystal clear (*see Shain v. Ellison,* 273 F.3d 56 (2d Cir.2001)("*Shain I* ")), defendants' liability appears to be a foregone conclusion.

The disputed issues left to try are the inherently individualized issues of what exactly happened to a particular plaintiff, how it affected him, physically and mentally, and whether there are mitigating circumstances that bear on his entitlement to recover dam-

---

**2.** The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding. *See Rodal v. Anesthesia Group of Onondaga, P.C.,* 369 F.3d 113, 118 (2d Cir.2004).

ages (such as the possibility that a strip search *could* have been conducted legally if only the DCJ personnel had bothered to make an individualized evaluation of the particular plaintiff's circumstances). Thus, I cannot conclude, as I did in *Dodge/Rango*, that class certification, even at the liability phase or under Rule 23(c)(4)(A), would serve any purpose. Not only is there no common question that predominates, there is no common question to try.

In their motion for summary judgment (discussed *infra*), defendants argue that the form of strip search DCJ personnel are supposed to perform, as specified in SOP § 44.04, was so noninvasive as to take it outside the rule of *Shain I* and render it perfectly reasonable under the Fourth Amendment. (I will address the merits of that argument below). One could of course litigate whether the inspection of a naked body, without any visual body cavity inspection, violates the Fourth Amendment, even absent individualized reasonable suspicion, on a class-wide basis. However, resolving that question would do nothing to advance the ultimate resolution of the named plaintiffs' lawsuit, because they expressly allege, and have testified under oath, that they were subjected to an invasive body cavity search, not just a visual inspection of their unclothed bodies. The reasonableness of a strip search that does not involve a visual body cavity inspection is thus not germane to their individual claims, and if that were the class-wide issue, the named plaintiffs' claims would be atypical of the class claims.

■ Moreover, even if the reasonableness of a "modified" strip search were relevant to the Franklins' situation, a class action would not necessarily be a superior method of resolving that discrete question. Whether such a search is or is not reasonable presents a question of law. That question could be raised and litigated by a detainee who does not allege that he was subjected to a body cavity examination, and Dutchess County would be bound by the ruling in any subse-

quent case where the same fact pattern was alleged.

The motion for class certification is denied.

*Defendants' Motion for Summary Judgment On the Issue of the Existence of a Policy Is Denied*

■ Defendants have cross-moved for summary judgment. As noted above, defendants admit that particular classes of individuals (including some detainees accused of non-contraband-related misdemeanors) are routinely strip searched without regard to individualized reasonable suspicion. Defendants allege that the nature of the search conducted at the Dutchess County Jail is not sufficiently intrusive to implicate the Fourth Amendment reasonableness concerns that have troubled so many courts in strip search cases. Defendants also assert that if persons in the proposed sub-classes were in fact subjected to body cavity inspections, whether before or after October 2002,[3] those searches were not conducted in conformity with the jail's policy, but in violation of that policy.

As noted above, the plaintiffs in this action are not claiming that they were unconstitutionally subjected to a visual inspection of their naked bodies without any inspection of their body cavities. Thus, defendants' "reasonableness" argument is irrelevant to their claims.

Moreover, there is a disputed issue of material fact about what defendants' policy really is—and, assuming that the policy was not intended to call for body cavity inspections, whether it is worth the paper it is written on. Plaintiffs have testified that, regardless of what the written policy says, they were subjected to a body cavity inspection, including the command to "bend over and cough," when they arrived DCJ. They have submitted affidavits from other arriving pre-trial detainees who make the same claim. The evidence they submit suffices to raise a disputed issue of material fact concerning what

---

3.   As of October 2002, the County's written policy explicitly states that: "A *strip search* will mean: The visual inspection of an inmate's body surfaces including ears, nose, and mouth, and the removal of ALL clothing. Clothing and possessions will be searched." SOP § 44.01(C), rev.

Oct. 1, 2002 (emphasis in original). *"NOTE: A STRIP SEARCH WILL NOT INCLUDE VISUAL INSPECTION OF A PERSON'S ANAL AREA OR THE EXPOSURE OR LIFTING OF GENITALIA."* SOP § 44.04(B)(7), rev. Oct. 1, 2002 (emphasis in original).

really happened to the Franklins when they arrived at DCJ and what the real policy was.

Regardless of what the policy actually is, defendants contend that they are entitled to summary judgment (even on the Franklins' individual claims) because the reasonable suspicion standard is automatically met for felony detainees due to the "nature of the charge" (a felony) and for those with prior felony convictions due to "characteristics of the arrestee" (a prior conviction). *See* Defendants' Reply Memorandum of Law at 2.

This court has already rejected defendants' argument. There is nothing "individualized" about a determination that anyone arrested for a felony is likely to be carrying contraband and any such conclusion is completely illogical. For a complete discussion of the point, the reader is referred to the court's opinion in *Murcia v. County of Orange*, 226 F.Supp.2d 489 (S.D.N.Y.2002).

Reasoning identical to *Murcia's* applies when the issue is a prior felony conviction on the detainee's rap sheet. Ramona Franklin is the perfect example of a person whose prior conviction on a felony charge did not necessarily give rise to reasonable suspicion that she might be carrying drugs or weapons. Mrs. Franklin was convicted of a financial crime—Medicaid Fraud. Nothing about that conviction suggests that she has ever been involved with weapons or drugs or any other form of contraband. Yet she alleged that she was forced to disrobe and was searched in a most humiliating manner.

The County's 2002 decision to eliminate persons detained on felony DWI charges from the strip search requirement in SOP § 44 is nothing more than a concession that certain types of prior felony convictions do not automatically implicate any concern about contraband carriage.[4] The Fourth Amendment standard is *individualized* reasonable suspicion, and there is nothing *individualized* about the sorts of classifications on which Dutchess County relies.

In any event, to reach the legal issue raised by defendants I would have to conclude that there was no disputed issue of

material fact concerning the level of intrusion inherent in the County's stated policy. As I have already held, I cannot do that. Aside from the testimony of the Franklins and others, certain elements of the written policy suggest that the officially sanctioned search is more intrusive than defendants would have this Court believe. For example, defendants insist that its officers merely look at the unclothed bodies of newly arrived detainees. However, SOP § 44 recommends that officers wear gloves, masks and protective clothing while conducting one of these searches. Wearing gloves and a mask is the sort of precaution one takes when conducting a body cavity search. The very fact that this recommendation is part of the policy could lead a trier of fact to infer that there is a lot more going on during these searches than just looking.

The defendants' motion for summary judgment is, therefore, denied.

### Sheriff Anderson's Motion for Dismissal on Qualified Immunity Grounds is Granted in Part and Denied in Part

■ Sheriff Anderson's motion for dismissal of the claims against him individually on the ground of qualified immunity is granted in part and denied in part.

Clearly, to the extent that the Sheriff seeks qualified immunity for subjecting persons detained on misdemeanor charges to strip searches, pursuant to a policy of strip searching all misdemeanor detainees who had a prior felony record, there is no such entitlement. The policy violates settled law—specifically the Second Circuit's decisions in *Shain I, supra; Wachtler v. County of Herkimer*, 35 F.3d 77 (2d Cir.1994); *Walsh v. Franco*, 849 F.2d 66 (2d Cir.1988); *Weber v. Dell*, 804 F.2d 796 (2d Cir.1986)(hereinafter "Weber/Walsh/Wachtler/Shain I"). Indeed, in *Shain I*, the Second Circuit announced that the law concerning strip searches of persons accused only of misdemeanors was well settled by 1995—a full five years before Sheriff Anderson took office.

---

4. Based on the evidence this Court heard at the trial in *Dodge v. County of Orange*, 282 F.Supp.2d 41 (S.D.N.Y.2003), I can state with some confidence that a person arrested for DWI is far more

likely to be secreting contraband (in the form of alcohol) on his person than is someone arrested for failing to keep up with her restitution payments.

■ To the extent that the Sheriff argues that the "strip searches" conducted pursuant to the DCJ policy were not the sort of "invasive body cavity searches" that were the subject of those prior decisions, I can only say that qualified immunity motions are decided by assuming the plaintiff's version of the facts to be true, *Stephenson v. Doe,* 332 F.3d 68 (2d Cir.2003) and that is not the Franklins' version of the facts.

■ However, Sheriff Anderson makes a far more compelling argument when he suggests that Ramona Franklin cannot hold him personally liable because he is entitled to the benefit of qualified immunity.

As I noted in the companion cases of *Dodge* and *Rango, supra,* until I decided *Murcia v. County of Orange, supra,* no court in this Circuit had concluded that it would violate the Fourth Amendment to strip search a newly-arrived pre-trial felony detainee in the absence of particularized individual suspicion to believe that he was carrying contraband. And our Court of Appeals has yet to opine on that issue.

The Second Circuit has held that the law cannot be "clearly established" for qualified immunity purposes by district court opinions, but only by the decisions of the applicable circuit court or the Supreme Court. *Shechter v. Comptroller of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991); *Hawkins v. Steingut,* 829 F.2d 317, 321 (2d Cir.1987); *Chipperini v. Crandall,* 253 F.Supp.2d 301, 307 (D.Conn.2003). Therefore, this Court's decision in *Murcia* is not sufficient to put Sheriff Anderson on notice, as of the date of that decision, that the indiscriminate strip searching of newly-arrived felony detainees was unlawful, nor is the law "clearly established" for qualified immunity purposes.

That being so, I conclude that, until the Court of Appeals clearly extends the reach of *Weber/Walsh/Wachtler/Shain I* to a new class of persons—felony detainees—reasonable law enforcement officials in Sheriff Anderson's position could come to different conclusions about what the law permits with respect to on-arrival strip searches of such individuals. Thus, to the extent that Ramona Franklin seeks to hold the sheriff liable for enforcing a policy that required the strip searching of accused felons who arrived at the DCJ, the Sheriff is entitled to qualified immunity.

As far as I can tell, discovery in the matter is complete and the parties are ready for trial. Parties should submit pre-trial orders and pre-trial briefs to the court within 60 days of this decision.

This constitutes the decision and order of the Court.